and I represent Mr. Young, the appellant in this matter. Mr. Young has been sentenced to 70 months for being a felon in possession of a firearm. I'm trying to do things somewhat in order. First of all, I would like to indicate that I'd like to reserve three minutes if there is no factual basis upon which our motion for finding him not guilty should have been granted and that there is no factual basis to assume that Mr. Young possessed these weapons. This is a case, and factually it's significant, that these are very poor people who are in the process at the time of his arrest of moving in black garbage bags. The testimony is clear that his girlfriend and mother of his child was in the process of moving. She didn't have a car, and she was moving in garbage bags. There had been an argument between Mr. Young and his girlfriend, and he'd moved out in February, and in fact he was residing with a Mr. Compo, who was also a defendant, or he was with the Mr. Alden, I think that's pretty clear, that there's evidence in the case that the two of them were living in that place up until probably the day before, and indeed you could conclude, viewing the evidence in the government's favor, that the two of them were even living there on the day that the firearm was found. But the issue seems to be, if you've got people that are in joint custody of, joint tenants, if you will, of a rental property as they were, how do we show, how do we conclude that this defendant had possession of the gun? He didn't have any, there are no fingerprints on it. There was, I would only argue with the court momentarily about the facts. Mr. Young had left, he still had a relationship with this woman, he was coming and going from time to time, I think the facts would indicate, but there's nothing to indicate, and in fact the testimony of Misty Brazel would clearly indicate that she wasn't, she had a small child, she was probably some kind of a crash pad, or it was being used for that at the time that this warrant was executed. Did she testify at the trial? Yes, she did. And she said, I didn't have possession of the gun? She said she never saw any weapons, she wasn't aware of any weapons, and if there were any there with the small child, she certainly would not have allowed it. But as far as she saw no weapons, she knew of no weapons. And the defendant did not testify? He did testify, and he also testified that he was not aware of any weapons, never possessed any weapons. In fact, factually, it's interesting that when I cross-examined the officer who executed the warrant, he indicated that I asked him specific questions. Was there toys for small children? Was there any women's hair sorts of things in the bathroom, hair dryers, combs, brushes? He didn't know any of that. Was there any personal effects of Mr. Young there? Shaving gear, the normal sorts of things that would indicate someone was living there. He didn't remember any of that. You thought Mr. Young's picture I.D. was found there, maybe with a different name on it, but his photograph. Is that correct? That is correct. It was not a current, I think it was two or three years old. It was not a current I.D. It was not his current driver's license. His current, there was some things with his name on it. There was documents which would amount to dominion and control type documents, but they were invariably old documents, years old. Here's the issue I've got. I mean, it seems to me that you may be right, maybe he did move out, but if the question is sufficiency of evidence, it seems to me there is sufficient evidence or there's some evidence from which a jury looking at the evidence in the light most favorable to the government might be able to conclude that Mr. Young and his girlfriend still lived there. But I'm not deciding that. I'm taking a look at your arguments. But I agree with Judge Thompson that then they're still assuming, and I guess I want to get you off your primary argument for a moment, but assuming that we reject that, we conclude that the couple still lived there. And what evidence is there that ties Mr. Young to the gun, if any, as opposed to the woman he lived with? None. I would answer that in a different way, is that if there's any inference here, the inference is that Mr. Young previously resided there. There is no inference that in fact he possessed any weapons. And my time is limited, so I wanted to move on to a couple of the sentencing issues. And probably the most significant one to Mr. Young is the third-degree assault and whether it should be counted as a crime of violence. And this Court has ruled on that issue on a number of occasions, and we would suggest that in this case it certainly should not, that the judge, and we cited in my memorandum what the judge's oral statement was in that regard, and it is not sufficient. First of all, you have in the extracts the judgment and sentence as well as his statement of plea. This was clearly an assault third. It was a negligent offense. In fact, Mr. Young's, what appears to be his own words, not those of his attorney who represented him during that assault three, clearly indicated that he talks of inadvertence, I believe, in his statement on plea of guilty. He clearly indicates a nonintentional act. That is in the heart of that portion of the offense, which is a negligent matter. Was there any actual harm done? The judgment and sentence is indicative of if there was any injury, it was minor. I say that because it indicates that restitution would be appayable if there is any restitution. It's not a third. As you know, we can't evaluate it on that basis under the Taylor categorical approach. So you may want to save the remainder of your time for rebuttal because you're down under three minutes. Okay. Thank you. All right. We'll hear from the government. Well, Your Honor, my name is James Haggerty. I'm an assistant United States attorney for the Eastern District of Washington. Mr. Haggerty, let me get you right to the question at the crux of the case that's in your argument. But assuming that the evidence is sufficient to show that Mr. Young still resided in the apartment at the time of the search, what evidence is there that would tie Young specifically to the one of the several firearms that were found? I mean, if all the evidence shows Young and his girlfriend, Ms. Bassel, are living in that apartment and they have like a joint occupancy, how do we deal with cases like U.S. v. Delgado or U.S. v. Reese that seem to suggest, at least to me, and I don't know if the government has briefed this because it wasn't really argued, I don't think, by Mr. Young, but how do we deal with those cases that say that joint occupancy does not permit the inference that one of two people is the possessor of a weapon without some other evidence? I have not briefed that because that wasn't raised. The problem that you have is when you have two people in a residence that have joint control over it and have joint access to each and every space or place within a residence is to say, especially like in this case where you have both of them, Ms. Bassel, the girlfriend, says, I'm unaware of any firearms in the house. I would not have any firearms because I have a small child in my house, so I know nothing about the firearms that were hidden. And then you have Mr. Young who says, well, I know nothing about the firearms in my house, but you have the firearms, you have firearms that are tucked under a mattress, so obviously indicative of someone who is attempting to conceal those firearms. The other one is that there was a rifle that was found in the corner under a blanket in plain view. So the question becomes is how does one who lives at that residence not see the most obvious thing in the room, and that is a rifle in the corner with a blanket. And it's not like you can hide the very nature of that by putting a blanket because of that. But that's the question. The difficulty is precisely as you say, for almost 50 years we've had circuit law that says joint possession of a residence or a location is not enough to link you to a firearm. And we have cases that are almost like this where, for example, they had a gun under a pillow and a husband and wife lived in the residence and the Ninth Circuit said, well, you know, there's not sufficient evidence to link. The cases where we found a link is where we find a fingerprint or some testimony or something. So the difficulty I'm having is reconciling your position with the precedent because I think what your argument is is you can make some inferences because the gun was there. So it must have belonged to somebody or somebody must have known. But is that enough to say that he has constructed possession? Because I admit this gun didn't get there by divine intervention. That's correct. And the thing is, again, the issue of this whether two people can have it, it is two people can have possession of it. And to say, well, you need to show that actual by fingerprints, my experience in 15 years of prosecution is there's never been a fingerprint raised on a firearm. It just doesn't happen. In the real world, we're not going to get that. I think we're probably going to want to give you an opportunity, at least I want to give you an opportunity to write a supplemental brief on this issue, as well as to give the same opportunity to Mr. Alden, because we've got these at least two cases. Let me just so you're not caught totally by surprise, but I don't really expect any lawyer on the spot to have a perfect answer to cases that weren't briefed. One is U.S. v. Delgado, and it's a case where the court reversed two defendants' convictions for possessing marijuana where it was found in a drawer in between the beds they slept on. And the court just said, you have to have individualized guilt, and we can't speculate which one of them possessed it. So they both got off. And then there's another case called U.S. v. Reese where they find, as Judge McEwen said, a firearm under a pillow and another one behind a painting in a house, again, that a defendant shares with his wife. And the court ends up concluding that his fingerprints weren't on the weapon and he couldn't be convicted by that. And they say where a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support conviction based on constructive possession against any of the occupants. Now, you know, this precedent might be wrong, but a panel can't overrule it. Only an en banc court or the Supreme Court can. So unless you can explain that precedent away to us, we're going to be bound to follow it. And I would indicate that I think that from what you've read is that is incorrect. I mean, it's simply in this case we are confronted with the fact that Miss Bassel, the girlfriend, testifies that she moved out on the first of the month or the second of the month, and she wasn't residing there. And then the defendant claims he wasn't residing there either. But then on the fifth, the day before the search warrant, both of them are at the residence. The defendant is laying on the bed sleeping when the probation officer gets there. So the question is that it's hard to, from that standpoint, is if you take Miss Bassel's word, she didn't live there, Mr. Young did, or he says he didn't, but he was there. So they're both in control of it. And I think that the jury is looking, and I think the argument is, if you take the two people, Miss Bassel says, I don't know anything about firearms and I wouldn't. You take Mr. Young, who is a convicted felon who has assaulted a police officer and run from the scene in handcuffs, and that's why they're looking for him, the evidence lends itself to believe that the person who is in control of those firearms would be the main likely candidate would be Mr. Young in that case. But I will – That's what I was wondering. Let's say you had a hypothetical case where, you know, Willie Sutton, who's done a string of armed bank robberies, lives with, you know, some St. Teresa-type woman who just, you know, makes an exception to her normal goodness because she wants to live to help this person. And now they find a firearm in the – a chest in between where they both have sleeping quarters. You know, can the jury say, well, it's more likely Willie Sutton is the possessor than St. Teresa, you know, if it's joint possession? Our precedent seems to create some barrier to finding sufficient evidence when it's a constructive possession case. So I guess I'm going to want to see a brief on it. Maybe it would be more productive, since the parties haven't focused on this, if we leave this issue for your supplemental briefing so that everybody's on a level playing field. And if you had any other points you wanted to address on the classification of the convictions, that might be productive to do now. Although, again, our law is quite well established in that area. I want to address the issue of the assault. I think that the last issue that raised the driving while suspended, I think, is the Williams case. It governs that. I don't think there's anything. And I think the search warrant, the particularity issue, I think, is pretty clear that that is an easy finding to make. And I want to take this time because, interesting enough, that we acknowledge that the Court of Appeals has ruled in August of 2004 in the United States versus Sandoval that third-degree assault in Washington is not categorically a crime of violence. And that is my case. And so I'm very familiar with the facts of that case. And I think that there's not really a good way for me to try to argue around that decision. But we have the modified categorical approach. And the concern is that under that, we allow the judge to look at documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes. And in this case, what we have is those documents include an original information, which is what the document in the State does. And it says that he intentionally assaulted an identified individual by use of namchukka sticks. And he also has a guilty plea that admits to that. Then there is some form of plea to assault third degree, which is criminal negligence. But the question then becomes is the conduct is intentional. And where are we going to stop? But the concern is if you say, no, it can only be the statute of conviction, then we've ignored reality. Because the judge, the district court judge in this case, saw the intentional act and had that. And then the second point is there in supplementing that we say, well, we're not going to let him look at the facts. Shepherd says you can't go to the reports. But in the PSR, which this court has said, well, we don't want you to look at that, he doesn't object to those facts. But you have this intentional, and so it seems that that's a judicially noticeable document from which he can predicate, regardless of the fact is that there may have been a plea. And as we know, the state lays them down for any number of reasons. But the original conduct, and to say you can't look at that because that's not what he pled to, but that was really what happened, is asking the district court to ignore reality and create some fiction that, oh, well, what he really did wasn't what it is, but the judge doesn't have any of that information. So I think under this situation, because those documents show an intentional conduct, it does, even under the modified categorical, and even in light of Sandoval, this is a predicate offense for which the enhancement was appropriate. Thank you. Thank you. Thank you for your argument. Mr. Alden, as I indicated, Mr. Hagerty, I think, will suspend this argument so everybody's on an equal footing and will have supplemental briefing on this constructive possession situation. Yes. With respect to the sufficiency of the evidence. Yes. Do you want me to respond to the other? Yes, if you want to respond to the classification. I think the prosecution's argument is very novel. They're asking you to look at the original information, which was dismissed, and saying, well, gee whiz, judge, that's what really happened. No, that's not what he was charged with. There was a supplemental information or an amended information which charged assault three, which includes non-intentional conduct. Mr. Young pled to non-intentional conduct. And, in fact, in his statement on plea of guilty, he makes it clear, and it's non-lawyer's words, it's very clear that he says, yeah, I wasn't paying attention, da-da-da, or something to that effect. That is non-intentional. So even under the non-categorical approach, he pled to a non-intentional act, and, therefore, it is precluded. The DWLS I wanted to bring to the Court's attention because where I practice at the trial level, I think we're scratching our heads to some extent. I think that not only after Williams, the Hernandez-Hernandez case, I think we all are scratching our heads a little bit because we're ‑‑ seemingly the Court is saying that, well, if you have 30 days of sentence and 28 of it suspended, it doesn't count. If the judge suspends all 30 days, it does count. And that runs right in the face of the guidelines provisions, which clearly says that a sentence to imprisonment only includes the unsuspended portion. Well, luckily, the guidelines are only advisory. Now they're advisory, yes. But in this case, the judge took it as being an increased factor. And the clear language of the guidelines would seem to me to indicate that a sentence to imprisonment is only the unsuspended portion. And in this case, it was totally suspended. And it seems that the Court has questioned its own Williams decision by Hernandez-Hernandez, and I think this is a wonderful opportunity for the Court to clarify that so us folks who go through this exercise, sometimes slightly Byzantine, determining these things can understand if an unsuspended portion of the sentence really means what it says. Thank you for the alert. The case of United States v. Young is submitted. I thank both counsel for your arguments this morning.
judges: Thompson, McKeown, Gould